IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

PRINCE D. KEY,

Plaintiff,

v.

SANDRA MCARDLE, JOLINDA WATERMAN,
BETH EDGE, MICHAEL SNODGRASS,
SCOTT A. HOFTIEZER, and JAMES GREER,

Defendants.

OPINION and ORDER

18-cv-510-jdp

Plaintiff Prince D. Key, appearing pro se, alleged that defendant prison officials violated his rights by failing to properly treat his injured knee and colitis and that they failed to respond to a medical emergency when he woke up with a swollen chest, which turned out to be a bacterial infection. Defendants fell into two groups: (1) current or former Department of Corrections employees Jolinda Waterman, Beth Edge, Michael Snodgrass, James Greer, and Scott Hoftiezer (whom I will sometimes refer to as the "state defendants"); and (2) Nurse Practitioner Sandra McArdle, who worked for a company contracted to provide medical services at the prison. Both sets of defendants filed motions for summary judgment, and I granted both motions, resulting in the case's dismissal. *See* Dkt. 69. Key has filed a motion under Federal Rule of Civil Procedure 59(e) to alter or amend the judgment entered in defendants' favor. Dkt. 71.

Rule 59(e) permits a court to amend a judgment only if the moving party demonstrates a manifest error of law or fact or presents newly discovered evidence. *See, e.g., Miller v. Safeco Ins. Co. of Am.*, 683 F.3d 805, 813 (7th Cir. 2012). Key fails to demonstrate either of those things here, so I'll deny his motion.

Key objects to me interpreting some of his statements in his summary judgment materials. For instance, I stated:

- "I infer from Key's version of the story and the opioid consent form McArdle filled out that Key believes that McArdle exaggerated the effectiveness of her current treatment." Dkt. 69, at 15.

- "I presume what Key means is that Edge did not refer his complaints of increased pain to someone who could prescribe something else . . . ." *Id.* at 17.

- "[T]he surgeon's recommendations did not include any new pain medication. I take Key to be saying that this is incorrect: he refers to the surgeon's post-surgical instructions . . . ." *Id.*

Key contends that because his underlying statements were capable of more than one interpretation, the true meaning of those statements are factual issues that may only be resolved at trial.

But a trial is necessary only if there are genuine disputes of material fact between the parties. The issue Key raises is different: parts of his materials were ambiguous or did not spell out his arguments with clarity. Courts are often forced to infer what a party means in a filing, and I have generously construed Key's statements because he is a pro se party opposing motions for summary judgment. He doesn't explicitly say that I interpreted any of his statements incorrectly, much less that I was incorrect in a way that would change the outcome of my rulings. So he is not entitled to Rule 59 relief on this ground.

Key also makes specific arguments about several of his claims.

## A. Defendant Edge

### 1. Post-surgical treatment

Key seeks reconsideration of three rulings on claims against defendant Nurse Beth Edge. Key brought an Eighth Amendment claim against Edge for failing to properly treat him upon his return to prison after arthroscopic surgery on his knee. Key alleged that when he returned

2

to the prison following surgery, he was in severe pain after his medication wore off, and his wound bled through the bandages; he alleged that Edge said that he should be given Tylenol but she otherwise did not arrange for him to be treated, even after Key he made repeated complaints. But at summary judgment, Key did not present evidence disputing Edge's version of events: she saw Key the day of his return, did not note any bleeding, and a few days later a doctor noted no drainage. As for the claim about pain medication, it was undisputed that Edge could not prescribe medications herself, and that she told Key that he would be notified if the offsite provider or his advanced care provider at the prison authorized something stronger. Later that day, after Key's post-surgery medication started to wear off, he made at least two requests to Edge for stronger medication, but Edge said that he would get only Tylenol. Key did not support his proposed findings of fact with evidence that he asked Edge to locate someone who could approve stronger medication for him, or that Edge disregarded any such request.

In his motion for reconsideration, Key says that I overlooked or misunderstood this claim. Key says that he did not start feeling severe pain or bleeding through his gauze until after his initial meeting with Edge, so that meeting was irrelevant to his claim; he states that later in the day Edge blew off his requests for treatment for his bleeding and his pain. He submits a declaration in support of his motion for reconsideration stating that it was Edge's duty to respond to his requests for help and that she did not. He refers to his grievance about his lack of treatment that day. *See* Dkt. 1-1, at 62. Key also says that the fact that a doctor found no drainage a few days later is irrelevant because his surgical wound had started healing by then.

3

Key is correct that his claim is about events that occurred after he was initially seen by Edge upon his return to the prison. But he is incorrect that I misunderstood his claim: I considered Edge's alleged actions or inactions both at and after her meeting with him upon his return from surgery, because all of her interactions with him inform the analysis about whether she treated him with conscious disregard.

I'm not sure that it's reasonable to infer, as Key proposes, that the note of "no drainage" from the doctor who inspected Key's surgical wound a few days after the surgery meant only that there was no drainage occurring *at that very moment,* instead of meaning that Key's wound site appeared clean, without extensive bleeding through his dressing as he alleges. But even if I ignore the evidence of Key's meeting with Edge before his symptoms got worse and I ignore the "no drainage" note, the state defendants are still entitled to summary judgment on this claim against Edge because Key failed to produce evidence supporting his claim.

Key's original declaration opposing defendants' motions for summary judgment does not include Key's version of the events surrounding this claim. I cannot consider Key's new declaration in a Rule 59 motion, because it contains evidence that Key could have brought opposing the summary judgment motions. *See, e.g.*, *Oto v. Metro. Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000) ("A party may not use a motion for reconsideration to introduce new evidence that could have been presented earlier."). Key's only other evidence is his contemporaneous grievance, which I already considered in my summary judgment opinion: I stated that the examiner could not find any evidence of this alleged requests to Edge to treat his pain and bleeding. The medical records provided by the parties don't show those requests either. Nor is there any evidence that Edge received and responded to the alleged requests.

Because Key did not timely present any evidence showing that Edge blew off Key's pain or bleeding, there is no reason to reconsider my dismissal of that claim.

### 2. Cellulitis

Key brought an Eighth Amendment claim against Edge for the delay in treatment for cellulitis, a bacterial skin infection. Key alleged that Edge waited five hours to treat him after he woke up with dizziness, difficulty breathing, nausea, and the right side of his chest swollen and painful. Edge's rationale for not immediately treating Key was that she triaged his problem in relation to other prisoner' medical needs and that at least some of the delay was caused by medical staff performing lab work for other inmates who had already fasted, and by Program Review Committee meetings using space in the Health Services Unit. I granted summary judgment to Edge on the Eighth Amendment claim because Key didn't provide any evidence supporting his theory that medical staff could have split their work between the lab work and his problem or that there was space available in the Health Services Unit or on his unit, and because even if Edge had erred in deciding how to appropriately triage patients, that could support only a medical malpractice claim, not an Eighth Amendment conscious-disregard claim.

In his motion for reconsideration, Key says that he did provide evidence supporting his claim, such as proposed findings in which he characterizes his condition as an emergency and his inmate grievance about the issue that was "affirmed" in his favor, with the examiner saying that "it appears there was a delay in treatment." Dkt. 1-1, at 47–48. But I've already considered the materials that Key cites. Key isn't an expert, so his own characterization of his cellulitis as an emergency is not an opinion I can consider. I've already determined that Key's cellulitis was a serious medical need, and I agree with the grievance examiner that there was a delay in

treatment. But that still doesn't mean that Edge consciously disregarded Key's condition. Rather, she balanced Key's problem against other inmate medical needs while considering the reduced availability of medical staff and Health Services Unit space. Nothing in Key's Rule 59 motion persuades me that I erred in characterizing Edge's triage decision as at most a medical malpractice question. So I'll deny his motion on this issue.

### 3. Colitis

Key alleged that defendants failed to provide him with pain medications prescribed to treat his colitis and knee pain. In his motion for reconsideration, Key contends that he has done enough to show that Edge consciously disregarded his pain on September 2, 2017, when he wrote a health service request stating that staff were failing to refill his medications resulting in him running out of his psychiatric medications; Edge responded by telling him that he was responsible for submitting a "refill slip" when his medication was running low to avoid running out. I take Key to be saying that he could win this claim at trial because his grievance about the incident was affirmed in his favor. *See* Dkt. 1-1, at 61.

However, the grievance wasn't affirmed because of a problem with Key's colitis or knee-pain treatment. The institution complaint examiner initially recommended dismissing the grievance, saying that Edge was correct that it was not up to correctional officers to make sure that prisoners' medications were refilled on time. *Id.* at 59–60. But the reviewing authority affirmed the grievance instead, stating that the grievance was about "reordering and refill of [Key's] psychiatric medication" and that the record "confirms a refill of Paroxetine was not timely"; the ruling was copied to the health services manager for follow up. *Id.* at 59–61. Paroxetine is a medication that Key was prescribed for mental-health issues, not for the medical problems that are part of this lawsuit. Nothing in the grievance materials suggests that Edge

6

consciously disregarded Key's knee pain or colitis by telling him to fill out refill slips himself. So I'll deny his part of his Rule 59 motion.

## B.  Defendants McArdle, Waterman, Greer, and Hoftiezer

Key brought a series of intertwined claims about inadequate pain treatment for his injured knee and colitis. In particular, Key alleged that defendant Nurse Practitioner McArdle continued to prescribe him pain medications that had already been ineffective to treat his pain, that she would not seek stronger opioid medications, and that a different provider eventually found a medication that worked for him; defendant Health Services Manager Waterman failed to help him after he complained about McArdle's lack of treatment and ultimately told him that he would not receive different pain medication; and defendants James Greer and Scott Hoftiezer sat on the "Class III Committee" enforcing policies limiting stronger medication.

I concluded that no reasonable jury could conclude that McArdle acted with conscious disregard to Key's pain because the medical record showed that McArdle continually attempted to treat Key's pain by prescribed several different types of medication, she submitted Class III Committee requests for stronger medication, she helped Key obtain other types of care such as a knee brace or sleeve, bicycle exercise, and recreation restrictions, and she made referrals to the pain, gastrointestinal, and orthopedic clinics, which eventually resulted in Key's knee surgery.

Key reiterates that McArdle should have tried other treatments during a four-month window when the only pain treatment he received was over-the-counter dosages of acetaminophen and capsaicin cream. But as I already stated, during this time McArdle did take other actions in an effort to address his pain, including forwarding Key's request for gabapentin

to the Class III Committee, and referring him to an outside provider for an EMG and to offsite clinics. Those efforts do not show conscious disregard on McArdle's part.

Key says that I incorrectly stated that McArdle prescribed him several different medications when she prescribed him only Tylenol and topical creams. This is incorrect because McArdle tried two forms of Tylenol—over-the-counter strength Tylenol and Tylenol #3 (acetaminophen with codeine, an opiate)—sulfasalazine, duloxetine, and two types of topical creams or gels.

Key also says that I was incorrect in considering some of McArdle's treatments to be legitimate attempts to help him, such as providing him with a knee brace or sleeve, bicycle exercise, and recreation restrictions. Key says that he already had a knee sleeve and recreation restrictions, and that he was injured to the point that he couldn't perform certain recreational activities anyway.

In support of Key's statement that he already had a knee sleeve, he attaches a document showing that he was already prescribed a sleeve that he brought with him when he was transferred to Wisconsin Secure Program Facility. Dkt. 72-1. But he did not refer to this document in opposing the summary judgment motions so I cannot consider it now. Even if he had raised this evidence the first time around, there's no evidence to suggest that McArdle knew that she was re-prescribing an item that Key already had. McArdle's mistake might be part of a medical malpractice claim but is not sufficient to support an Eighth Amendment claim. Key didn't dispute the proposed finding about bicycle exercise in the summary judgment briefing and he doesn't specifically address it now. And the fact that McArdle continued appropriate recreation restrictions is a point in her favor, not against her: it's evidence that she

Case: 3:18-cv-00510-jdp   Document #: 77   Filed: 07/27/20   Page 9 of 10

did not consciously disregard Key's injury. None of Key's arguments about these items or restrictions are reason for me to grant his Rule 59 motion.

Key says that defendants violated the Eighth Amendment by failing to follow a specialist's recommendation that he receive Linzess, a drug that calms pain-sensing nerves in the bowel and accelerates bowel movements. It's true that failure to heed a specialist's recommendations can violate the Eighth Amendment, but none of the named defendants were responsible for Key being denied Linzess. McArdle did seek approval for the drug, only to have it denied by the Class III Committee. But there was no evidence that defendants Greer and Hoftiezer were personally involved in the Class III Committee's decision denying that drug.

Key contends that I committed a manifest error of law in dismissing the claims against McArdle instead of following the reasoning of decisions such as *McGhee v. Suliene*, No. 13-cv-67-bbc, 2014 WL 576150 (W.D. Wis. Feb. 12, 2014) and *Talley v. Melby*, No. 14-cv-783-jdp, 2018 WL 5266593 (W.D. Wis. Oct. 23, 2018). Key contends that these cases show that a court must deny the defendant's motion for summary judgment when a case boils down to whether a medical professional persisted in ineffective treatment. He also states that I should recruit him counsel because the medical issues are too complex and expert testimony would be needed to assess the adequacy of his case. *See Talley*, 2018 WL 5266593, at *6.

Key's case involves similar Eighth Amendment questions as *McGhee* and *Talley* regarding the adequacy of treatment that prison officials provide but that does not fully resolve the prisoner's medical problems or pain. But each case is different, and there is no rule mandating recruitment of counsel for medical care cases. Sometimes counsel or an expert is necessary to accurately gauge the adequacy of a provider's care. This case does not present that difficulty.

In particular, this case is different from cases like *McGhee* and *Talley* because McArdle was constrained in various ways from providing Key with stronger pain medication: the state's opioid guidelines advised against the use of opioids for chronic pain, the Class III Committee approved tapering of Tylenol #3 and rejected McArdle's requests for gabapentin and Linzess, the pain clinic stated that there were no more options to treat him, other outside providers counseled against opioid use, and opioids were counterindicated for people with colitis. *See* Dkt. 69, at 13–14. Given the facts provided in the summary judgment materials, no reasonable jury could look at the various treatments that McArdle provided for Key's pain and conclude that she consciously disregarded the problem. Key fails to show that I made a manifest error of law by failing to recruit him counsel instead of granting summary judgment to McArdle.

ORDER

IT IS ORDERED that plaintiff Prince D. Key's motion to alter or amend the judgment, Dkt. 71, is DENIED.

Entered July 27, 2020.

BY THE COURT:

/s/

_____

JAMES D. PETERSON
District Judge

10